# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF BEAR STEARNS COMMERCIAL MORTGAGE SECURITIES, INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2002-PBW1<br><br>Plaintiff,<br><br>v.<br><br>DANIS FIFTH THIRD CENTER, INC.<br><br>Defendant. | No. 3:10-cv-00031-TMR-MRM |

## ORDER APPOINTING RECEIVER

This matter is before the Court on the Petition for Appointment of Receiver filed by the Plaintiff, Bank of America, N.A., as successor by merger to LaSalle Bank National Association as Trustee for the Registered Holders of Bear Stearns Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-Through Certificates, Series 2002-PBW1 ("Plaintiff" or "Holder"), and related to the real and personal property located at 110 North Main Street, County of Montgomery, State of Ohio, as more fully described in Exhibit "A" hereto (the "Property" or "Mortgaged Property").

### FINDINGS OF FACT

1. On August 30, 2002, Prudential Mortgage Capital Company, LLC ("Original Lender") made a loan to Danis Fifth Third Center, Inc. ("Defendant") in the original principal amount of $25,000,000.00 (the "Loan") pursuant to the terms and conditions of a certain

Promissory Note A (the "Note"). A copy of the Note is attached to Plaintiff's Complaint as Exhibit "A";

2. On August 30, 2002, Defendant executed to Original Lender an Open-End Mortgage And Security Agreement (the "Mortgage"), which was recorded on August 30, 2002 in the records of Montgomery County, Ohio as Instrument No. MORT-02-106006. A copy of the Mortgage is attached to Plaintiff's Complaint as Exhibit "B". The Mortgage secures payment of the amounts due and owing under the Note. Plaintiff is the holder of the Mortgage by assignment pursuant to an Assignment Of Open-End Mortgage And Security Agreement (the "Assignment") recorded in the records of Montgomery County, Ohio as Instrument No. SP/I 04-138009. A copy of the Assignment is attached to Plaintiff's Complaint as Exhibit "E";

3. The Property consists of land with all improvements, furniture, fixtures, equipment, easements, appurtenances, intangibles and personalty thereon, together with any and all other property and things identified in the Mortgage;

4. The Mortgage provides, in Article 3.1(d) that in the event of a default or defaults by Defendant thereunder, the Holder may:

> " . . . Upon, or at any time prior or after, initiating . . . any judicial foreclosure or instituting any other foreclosure of the liens and security interests provided for herein or any other legal proceeding hereunder, make application to a court of competent jurisdiction for appointment of a receiver for all or any part of the Property, as a matter of strict right and without notice to Mortgagor and without regard to the adequacy of the Property for the repayment of the Debt or the solvency of Mortgagor or any person or persons liable for the payment of the Debt, and Mortgagor does hereby irrevocably consent to such appointment . . . . "

5. The Defendant is in default of its obligations under the Note and Mortgage for failing to pay sums due thereunder. As a result of Defendant's defaults, the Holder's security in the Property is threatened.

**ACCORDINGLY, IT IS HEREBY ORDERED AND DECREED AS FOLLOWS:**

1. Donald Shapiro of Foresite Realty Management, L.L.C. (hereinafter the "Receiver") is hereby appointed Receiver over the Property with all of the powers and obligations set forth herein.

2. Until further notice of this Court, all persons or entities, including but not limited to tenants in possession of the Property or any portion thereof, and any persons liable therefore, shall pay to the Receiver all rents, income, or other amounts now due and unpaid and all rents, income, or other amounts hereafter to become due on their respective tenancies and Defendant, either directly or through its agents, servants, representatives and attorneys, is hereby enjoined and restrained from collecting any rents or fees from or incident to the Property and from interfering in any manner with the Property.

3. The Receiver shall have possession of the Property, including the real property, personal property and all other property subject to the mortgage and shall have full power and authority to operate, manage and conserve such property. Without limiting the foregoing, the Receiver shall have the power and authority, immediately upon the entry of this Order, to:

(a) secure tenants and execute leases for the Property, the duration and terms of which are reasonable and customary for the type of use involved, and such leases shall have the same effect as if made by the Defendant;

(b) collect the rents, issues and profits from the Property;

(c) insure the Property against loss by fire or other casualty, which may include, but not be limited to, the following coverage, without suffering any short rate premiums from any insurer or prospective insurer: property, liability (and excess liability), auto liability, workers compensation, EPLI, employer liability, employee dishonesty, business interruption,

boiler and machinery, builders risk, construction bonding, environmental, terrorism, other bonding professional liability and errors and omissions;

(d) employ construction managers, general contractors, subcontractors, architects, engineers, consultants, title companies, environmental consultants, asset managers, property managers, leasing agents, administrative support, attorneys, custodians, janitors, maintenance workers, repairman/contractors, assistants, agents, accountants and other employees reasonably deemed necessary, appropriate, or desirable to assist the Receiver in diligently executing the duties imposed upon the Receiver by this Order including, but not limited to, the maintenance and operation of the Property;

(e) pay taxes which may have been or may be levied against the Property;

(f) establish bank accounts, including having the right and power to (i) require said bank to convert the account name to such name as requested by the Receiver; (ii) modify the authorized signors on the account to those persons requested by the Receiver; (iii) delete any signors to the account as requested by the Receiver; and (iv) ensure compliance with other similar requests made by the Receiver, including but not limited to using the Defendant's TIN (FEIN or SSN) while naming the account as a receivership account;

(g) receive all rents and proceeds from the Property (whether historical, current or prospective), including, but not limited to, security deposits, rents and earnest money deposits presently in the possession of the Defendant and/or its agents;

(h) make all repairs, declarations, renewals, replacements, alterations, additions, betterments, and improvements in connection with the Property as may seem judicious to the Receiver;

(i)  hire or retain any agents necessary or appropriate to do any of the duties listed above without further approval of this Court, including, but not limited to, accountants, attorneys, environmental consultants and personnel, brokers, leasing agents, property managers, maintenance personnel, and/or security personnel;

(j)  insure and reinsure the Receiver, his agents, and/or the mortgaged Property against all risks incidental to the Receiver's possession, operation, and management thereof.  The Receiver may secure new insurance policies, if necessary;

(k)  terminate or enter into vendor or other contracts pertaining to the Property as Receiver may determine in its sole judgment are necessary, with no further obligation or liability (including not having to pay any termination fees) under any terminated contract;

(l)  procure or maintain utility services for the Property, to include but not be limited to gas/steam, electric, water, sewer, trash, phone, cable, internet, and snow removal, without suffering, regardless of the internal policies of any utility provider, the termination of such service or refusal to authorize any new account based upon previous unpaid bills for services rendered prior to the appointment of the Receiver or during the term of the Receiver, with any and all accounts to be opened or transferred to the Receiver's name, but using the existing Borrower's account information (including the tax identification number (TIN) of the Borrower). Further, the Receiver is not responsible for any utility bills accruing prior to its appointment and the Receiver is not personally responsible for any bills during the Receivership;

(m)  take possession of all cash or funds belonging to or for the benefit of Defendant in bank accounts associated with the Property (no matter from what time period), whether in the name of the Property, Defendant or its agents or employees, and to open, transfer and change all such bank accounts into the name of the Receiver;

(n) institute, prosecute, defend and/or settle such legal proceedings as the Receiver deems necessary relating to the care or possession of the Property and to collect any such sums which may be due from any source relating to use of the Property; and

(o) take such other actions as may be reasonably necessary to conserve the Property and other property subject to the mortgage, or as otherwise authorized by the Court.

4. The Receiver is authorized, without further leave of the Court, to defend or institute and prosecute suits or summary proceedings related to the Property or the duties imposed upon the Receiver by this Order, including but not limited to proceedings (a) for the collection of rents, income, and other amounts (which include tenants who have vacated their space), (b) for the removal of (i) any tenant or tenants in default (whether for failure to pay rent or other amounts when due, or otherwise, including violation of the Property rules) (ii) any tenant or tenants whose terms have expired and have not been renewed, or (iii) any other person(s) or entity(ies) unlawfully in possession of the Property, or (c) otherwise related to the Property or the duties imposed upon the Receiver by this Order. This Order shall act as notice to all tenants of the Property that the loan on this property is in default and the Property is in the foreclosure process.

5. The Receiver shall manage the Property as would a prudent person, taking into account the effect of the Receiver's management on the interest of the Plaintiff as mortgagee and Defendant as mortgagor. The Receiver may, without an order of the court, delegate managerial functions to a person in the business of managing real estate of the kind involved who is financially responsible and prudently selected. To the extent the Receiver receives sufficient receipts from the Property, and except to the extent ordered otherwise by the Court, the Receiver:

(a) shall maintain the existing casualty and liability insurance required in accordance with the Mortgage or applicable to the Property at the time the Receiver took possession, or shall find more cost-effective replacement insurance of comparable coverage with replacement insurers, and, to that extent, existing insurers of the Property are hereby ordered to release claims history on existing policies to Receiver;

(b) shall use reasonable efforts to maintain the Property in at least the same condition as existed at the time the Receiver took possession, excepting reasonable wear and tear and damage by any casualty;

(c) shall apply receipts to payment of ordinary operating expenses, including utilities, rents and other expenses of management, which are incurred after the entry of this Order;

(d) may pay the amounts due under the Mortgage provided sufficient funds are available;

(e) may make other repairs and improvements necessary to comply with building, life-safety and other similar codes or with such other contractual obligations as the Receiver deems affect the Property;

(f) may hold receipts as reserves reasonably required for the foregoing purposes;

(g) may take such other actions as may be reasonably necessary to conserve the Property, or as otherwise authorized by the court, provided sufficient funds are available;

(h) may also, with prior Court approval, pay any and all other outstanding obligations to suppliers incurred in arm's length transactions who, prior to the entry of this Order, supplied materials, business supplies and/or labor to or for the benefit of the Property, but only to

the extent the Receiver shall determine, in his sole judgment, that it is prudent to do so in order to maintain the business relationships with such suppliers for the benefit of the Property, provided sufficient funds are available from the Property, and without, by so doing, making the Receiver liable for any other antecedent debts relating to the Property.

6. To the extent the Receiver decides to continue the services of any current employees, agents or other personnel with respect to the Property, neither the Receiver nor any person or entity engaged by the Receiver hereunder shall be liable for any claims of any nature whatsoever of such employees, agents, or other personnel that arose prior to the date and time of the entry of this Order, which claims include, but are not limited to, unpaid but accrued wages, unpaid but accrued sick time, unpaid but accrued vacation time, unpaid but accrued overtime and/or any and all other liabilities related to unemployment and/or worker's compensation claims.

7. The liability of the Receiver is and shall be limited to the assets of the receivership, and neither the Receiver nor any person or entity engaged by the Receiver hereunder shall be personally liable for any duly authorized actions properly and lawfully taken pursuant to this Order.

8. Within five (5) calendar days of the entry of this Order Defendant and/or its agents shall provide or make available to the Receiver the following, to the extent such items and things exist:

  (a)  Defendant's federal employer identification numbers;

  (b)  Copies of any and all service contracts pertaining to the Property;

  (c)  Copies of any and all leases, lease abstracts, purchase agreements and the like pertaining to the Property;

  (d)  All open invoices for services or goods relating to the Property;

(e) A copy of the 2006-2008 year-end financial statement and 2009 year-to-date (and month by month detail) in both hard copy and electronic format: balance sheet, income statement, accounts receivable (and receivables/arrearages aging), operating statements, current year budget, sources and uses of cash flow, rent roll, accounts payable, check register, security deposit listing, trial balance, general ledger, contractor statements, lien waivers, sworn owner statements, construction draws, bank reconciliations and bank statement;

(f) A complete set of keys (including all masters) and all security and/or access codes and/or cards to the Property and a schedule (including full contact information) identifying each person or entity (including security companies, municipal/governmental agencies and utility companies), who currently has one or more keys and/or access cards to the Property or who has knowledge of any access codes thereto;

(g) In addition to the materials identified in subsection (e) above, any and all records and information Defendant may have concerning the Property, including without limitation all written and electronic books, records, correspondence, and other information related to (i) any agreements to which the Property is or may be subject; (ii) any amounts received from the tenants of the Property, from the time Defendant took ownership of the Property to the date of entry of this Order; (iii) all liens or other encumbrances on the Property; (iv) property taxes, assessments and related appeals; (v) insurance of all types for Defendant and tenants (including but not limited to liability, property, excess liability, auto liability, boiler and machinery, business interruption, professional liability, employee dishonesty, builders risk, construction related insurance and workmen's compensation) related to the Property; (vi) all maintenance and service contracts; (vii) all invoices for services at the Property; (viii) all tenant files, including leases, lease abstracts, purchase agreements and sample leases from the time

Defendant took ownership of the Property to the date of entry of this Order; (ix) a current and accurate copy of all electronic information for items related to accounting including tenant escalations/reconciliations from the time Defendant took ownership of the Property to the date of entry of this Order; (x) a schedule of all capital expenditures put into the Property since Defendant assumed ownership of the Property and any items of deferred maintenance and capital currently required; (xi) a full and complete rent roll including but not limited to schedules/information related to tenant security deposits, encumbrances, options, escalations, rents and term; (xii) all current or the most recent copy of an ALTA survey, Phase I and Phase II environmental reports, traffic studies, demographic studies, physical condition/engineering reports, building and life-safety code violations, zoning code information related to the Property and appraisal; (xiii) all marketing information (in hard copy and electronic format) including but not limited to brochures, photographs (including aerial), maps, signage, and (xiv) all other aspects of the Property records that are or may be necessary or pertinent to the Receiver's management, maintenance, operation and/or sale of the Property.

    (h)  Any and all insurance loss histories and/or claims on the Property;

    (i)  Any and all other documents relating to the Property as requested by the Receiver; and

    (j)  All property and all other things of value associated with use, operation and maintenance of the Property.

  9.  Defendant shall at all times after the entry of this Order provide full cooperation to the Receiver for carrying out its duties hereunder, and timely respond to all reasonable requests made by the Receiver. Defendant's obligation to use best efforts to provide or make available to the Receiver the items and things identified herein shall be continuing.

10. So long as any part of the Property remains in the Receiver's possession, the Receiver is directed to prepare and file with the Court, within sixty (60) days after the last day of the first month of the entry of this Order and no less frequently than every month thereafter, and within ninety (90) days after termination of the receivership, a full and complete report, under oath, setting forth receipts and disbursements and reporting acts and transactions regarding the execution of the trust of its office as Receiver, including a current inventory of the funds, assets, and property remaining in the receivership, interest in and claims against the same, and all debts and obligations contracted and expenditures made. The Receiver is further directed to serve copies of each such report on the attorneys of record for Plaintiff, Defendant, and any other party who submits a written request to the Court and the Receiver to be served with copies of such requests. Any party having an objection to the Receiver's report shall file a written objection with the Court no later than thirty (30) business days after the date of the Receiver's filing of the report. Any objection not filed within the time prescribed by this Order shall be deemed waived.

11. The Receiver may at any time file a motion requesting that it be exonerated, discharged and released from all its appointments as Receiver.

12. The Receiver shall not have any responsibility for the preparation or filing of any tax return of any kind for the Defendant but shall, if so asked by Defendant, provide the Defendant with information within Receiver's possession so that Defendant may prepare and file any such returns.

13. Neither the Defendant nor anyone associated therewith or acting under the Defendant's authority or control shall:

    (a) possess or manage the Property in any way;

(b) collect, withdraw or transfer, in any way, funds or revenue derived from operation of the Property;

(c) remove or destroy any property from the Property;

(d) terminate or cause to be terminated any license, permit, lease, contract or agreement relating to the Property; or

(e) otherwise interfere with Receiver's possession or operation of the Property.

14. Receipts received from operation of the real estate by the Receiver shall be applied in the following order of priority after payment of expenses associated with the Property:

(a) to payment and reimbursement of the Receiver for all fees, costs and expenses incurred by the Receiver or the Receiver's delegates in connection with all Property related expenses incurred by the Receiver;

(b) to payment of authorized insurance premiums;

(c) to payment of the Receiver's delegates of any management fees for managing real estate of the type involved;

(d) the balance, if any, shall be held or disbursed as ordered by the Court.

15. Defendant, its agents, and employees, shall turn over to the Receiver, within five (5) business days from the date this Order is entered, all sums in existence on the date hereof that are related or pertain to, or are derived from the Property, including, but not limited to, (a) all cash in hand, (b) all cash equivalents and negotiable instruments (such as checks, notes, drafts or other related documents or instruments), and (c) all sums held in accounts in any financial institutions, including, without limitation, (i) tenant/lessee security deposits, (ii) deposits held in escrow for any purpose, such as for payment of real estate taxes and insurance premiums, (iii) proceeds of insurance maintained for, or pertaining to, the Property, (iv) rent or prepaid rent, (v)

funds designated or intended for capital improvements, repairs, or renovations to, or in connection with, the Property, and (vi) all other sums of any kind relating to the use, enjoyment, possession, improvement, or occupancy of all or any portion of the Property.

16. The Receiver shall, upon the entry of judgment in mortgage foreclosure, be authorized to make and conduct a foreclosure sale upon the issuance of a writ of execution from Plaintiff and directed to Receiver, pursuant to 28 U.S.C. section 2001, et seq., and shall thereafter pass title to the Property to the successful bidder.

17. The Receiver shall be authorized pursuant to this Order, at any time following the date of entry of this Order, to execute and deliver, on behalf of the Defendant, and on terms and conditions acceptable to Plaintiff, any documents necessary to effectuate the assignment to a party or parties satisfactory to Plaintiff the obligations of Defendant as evidenced by the Note, Mortgage and related loan documents (collectively, the "Loan Documents") and the assumption thereof by said party, and this Order shall operate as a power of attorney in favor of Receiver in connection therewith.

18. The Receiver shall post a bond of $50,000.00 within ten days of the date of entry of this Order.

19. The Receiver shall be compensated for his services hereunder consistent with the fee schedule attached hereto and marked as Exhibit "B" to this Order.

Dated: January 27, 2010

**BY THE COURT:**

s/Thomas M. Rose

_____
Thomas M. Rose
United States District Judge

# EXHIBIT "A" TO RECEIVERSHIP ORDER

**See Attached**

**EXHIBIT B TO RECEIVERSHIP ORDER**
Danis Fifth Third Center
110 North Main Street
Dayton, OH 45402

**Receiver's Fees:**

1) Transition/Due Diligence (one-time) fee of $4,000.

2) Monthly fee of $1,500.

3) Receiver shall be entitled to reimbursement for all reasonable and necessary expenses required to carry out Receiver's duties including but not limited to: travel, out-of-pocket incidentals, $250/hour for all court appearances and related legal proceedings such as depositions or other matters, insurance, bond (any kind required by Court order or other legal agency) and Receiver's legal expenses (to the extent Receiver employs counsel and subject to Court approval).

4) 2.5% exclusive disposition brokerage commission plus 1.0% if an outside broker is involved-payable at closing. $6,000 reimbursed for all marketing expenses.

**Property Management/Leasing/Construction Fees:**
Commercially Reasonable amounts at Receiver's discretion that could include:

1) Property Management: the greater of 3.0% of collected gross revenues with a minimum of $6,000/month (combined between the Receiver and any property management company hired by the Receiver).

2) Leasing Commissions:
   A. 6.0% of total gross lease value of all rents for new leases, expansions or extensions over the full term (maximum 10-years) will be paid to Receiver or his agents at execution;
   B. 3.0% of total gross lease value of all rents for renewal leases over the full term (maximum 10-years) will be paid to Receiver or his agents at execution;
   C. If there is a third-party tenant broker*: 7.0% of total gross lease value of all rents for new leases, expansions or extensions will be paid to Receiver or his agents at execution, who will pay third-party broker (providing a proper waiver of lien is received) at execution to be allocated pursuant to a separate agreement;
      * Incentive commissions may be necessary on a deal by deal basis.

3) Reimbursement for all expenses required to carry out duties including but not limited to: direct and indirect property personnel in the areas of management, leasing/marketing, accounting, maintenance and administrative (full time or part time), travel, out-of-pocket incidentals, benefits and insurance.

4) Construction services of 5.0% on all construction hard and soft costs (excluding normal repairs and maintenance), if necessary.